CASE 53.—JUDICIAL SETTLEMENT OF THE ESTATE OF
CATHERINE HESSIG BY HER ADMINISTRATOR
WITH THE WILL ANNEXED TO WHICH CARL
AND FRED HESSIG'S GUARDIAN AND OTHERS
FILED OBJECTIONS.—January 21.

# Hessig v. Hessig's Guardian

Appeal from McCracken Circuit Court.

W. M. Reed, Circuit Judge.

From the judgment Herman T. Hessig appeals, and
the guardian ad litem of the infants filed a cross-
appeal.   Judgment affirmed on cross-appeal and re-
versed on Hessig's appeal.

1.   Release—Duress—Evidence.—Where a mother signed a sec-
ond receipt to her son as administrator of a deceased son
with full knowledge of its effect, the fact that the county
judge had told the administrator prior to the signing of the
receipt that if he did not make a settlement he would be
proceeded against for contempt, he having failed for three
months to obey the court's orders, and having lost a receipt
which he had previously obtained from his mother in order
to make a settlement, was insufficient to show that the
mother was induced to execute the second receipt by duress.

2.   Executors and Administrators—Release—Effect.—Where a
mother entitled to a distributive share in the estate of a
deceased son executed to another son, who was administrator,
a receipt for such distributive share without receiving the
same, in order that he might settle his accounts as adminis-
trator, the mother thereby changed her claim to a personal
debt against the son.

3.   Wills—Construction—Charge on Real Estate.—A provision of
a will, directing that any balance which testatrix might owe
on certain designated property should be paid out of the
proceeds thereof, constituted an express charge thereon of
the balance of the price of such property.

4. Wills—Construction—Limitation.—A provision in a will that certain property should be preserved intact, undisposed of until one of testatrix's grandchildren arrived at age, and might then be disposed of or divided as the owners desired, was a limitation on the owner's right to make a voluntary disposition of the property, and was not in conflict with a direction ·that the residue of the proceeds of the personal property, after paying debts and funeral expenses, might be divided between testatrix's son and her grandchildren, except that any balance which she owed on the property in question should be paid from the proceeds thereof.

5. Executors and Administrators—Claims—Assessments on Realty.—Assessments for street improvements on land belonging to testatrix's estate, not being debts for which she was personally liable, could not be properly demanded of the administrator with the will annexed, but was enforceable only out of the property.

6. Same—Liens Against Real Estate—Payment—Application of Rents.—Where lots belonging to testatrix's estate were subject to a lien for street improvements, the lots should not be ordered sold, but the administrator with the will annexed should be directed to apply the rents to the payment of such liens if the claims could thereby be liquidated within a reasonable time.

7. Same—Sale of Real Estate—Payment of Debts.—The personal estate of a deceased person should be exhausted in accordance with the terms of her will before any sale of real estate should be made to pay debts.

8. Same—Personal Property—Sale—Authority.—An administrator may sell personal property to pay debts without authority from a court of equity.

9. Wills—Debts—Contribution by Devisees.—Where the personal property of an estate was not sufficient to pay debts, each of the devisees of real estate should contribute to the deficiency in the proportion that the realty devised to him bears to the value of the entire real estate.

10. Executors and Admisistrators—Settlement—Allowance to Commissioner.—Where a commissioner is appointed to report on claims against decedent's estate, he should only be given the statutory allowance, and should be required to file a statement showing the number of days he was engaged.

11. Same—Accounting—Attorney's Fees.—On a judicial settlement of an administrator's account, he should be allowed but one atttorney's fee, which should be confined to the services rendered by the attorney.

12. Same—Accounting—Guardian Ad Litem—Fees.—Where, in a judicial settlement of an administrator's account, a guardian ad litem instituted an unsuccessful cross-action against a devisee, he should only be allowed out of the estate a sum sufficient to cover his services in the administrator's proceedings.

J. G. HUSBANDS for appellant.

(No brief for appellant.)

D. G. PARK, attorney in the cross actions for F. G. Dudolph as administrator of Cathreine Hessig, deceased, and guardian for Carl and Fred Hessig, infant defendants.

1. It is a well-settled rule of law that an action in equity may be maintained by a distributee against an administrator and surety upon his bond for an accounting and settlement of the estate, or to surcharge and falsify a county court settlement of the estate, or for devastavat, and a discovery of assets for the payment of debts and distribution of the excess to the distributee or devisee. (Civil Code, sec. 96, sub-sec. 1 and 3, and sec. 428; Moore v. Walter's Heirs, 1 A. K. Marshall, 489; Pilkington's Exor. v. Gaunt's Admx., 5 Dana 411; Stroud's Heirs v. Barnett, 3 Dana 392-3; Speed's Exor. v. Nelson's Exor., 8 B. M. 507 and 509; Caldwell's Extx. v. Kinkead and Others, 1 B. M. 228 and 229; Jenkins v. Smith, 4 Metcalf 383; Sale v. Crutchfield, 8 Bush 646 and 647.)

2. The will of Catherine Hessig, deceased, having directed in its terms "that all of her just debts be paid" and that the residuary personal estate after the payment of debts be equally divided between H. T. Hessig and the infant defendants, Carl and Fred Hessig, such appellees in their cross actions could require an "exoneration" of their devises and bequests by the payment of the debts of Catherine Hessig, deceased, out of such prsonal estate in the debts owing to it by H. T. Hessig, and his surety, as administrator of Fred A. Hessig, deceased. (Page on Wills, sec. 791-729; Hinson v. Ennis, 81 Ky. 363; Taylor v. Jones, 97 Ky. 205-6.)

3. The will of Catherine Hessig created an "executory trust" for the payment of debts and for the execution of the special terms of the trust in favor of the infants Carl and Fred Hessig; and it was the duty of F. G. Rudolph as administrator with the will annexed and as guardian for such infants to protect the

Hess_g v. Hessig's Guardian.

trust estate for their benefit.   (Morse v. Bank, 12 L. R. A. 62-64; Page on Wills, secs. 764-765.)

4. Inasmuch as the county court settlement included only the one "blanket receipt" in controversy for the full $21,000.00 cash received by the administrator, procured by fraud and duress, this was sufficient ground to open the whole matters of account with the administrator and the trial court properly restated such accounts.   (1 Daniel's Chancery Practice (5th ed.) 668 and 669; Kelsly, &c., v. Hobby, &c., 16 Peters 278, 279 and 280; 10 L. E. (U. S.) 964 and 965, S. C.)

5. The testimony and letters of agents and attorneys for the surety company are not "privileged" but are competent as evidence to prove fraud and duress on the part of appellant Hessig and the surety company.   (4 Wigmore on Evidence, sec. 2298; Underhill on Evidence, sec. 174; Mathews v. Hoagland, 48 N. J. Eq. 455, 465.)

6. The deposition of Catherine Hessig before the referee in bankruptcy was read without objection and the deposition of H. T. Hessig taken before the referee in bankruptcy is competent. (Wigmore on Evidence, secs. 1077, 1386, 1387, 1388; Bankruptcy Act, sub-sec. 9 of sec. 7 of chap. 3.)

7. Inasmuch as the debt in controversy from H. T. Hessig to his mother was originally "created' by "misappropriation" of the funds in his hands as administrator of the estate of Fred A. Hessig of which the mother was sole distributee, such debt was not released or discharged by his subsequent discharge in bankruptcy even if it be conceded the notes and receipt were executed without fraud or duress.   (Johnson's Admr. v. Palmster, 74 Vt. 58; 52 Alt. 73, S. C.; 3 Gould & Tucker's Notes, 6567 and 657 (Bankruptcy Act, sec. 17); Madison v. Bunkle, 114 Ind. 262; Donald v. Kell, 111 Ind. 1; Crisfield v. State, 55 Md. 192; Field v. Howry, 132 Mich. 687; Buell's Exor. v. Israel, 2 Ky. Law Rep. 315.)

8. Inasmuch as the will of Catherine Hessig, deceased, by its terms charged the property devised with the payment of her debts and the appellant H. T. Hessig had accepted the provisions of her will he was not entitled to any homestead in the property devised to him as against his indebtedness to her estate, or as to the debts of her estate.   (Harris v. Taylor, 21 Ky. Law Rep. 287; Schnabel v. Schnabel, 108 Ky. 538; 22 Ky. 234-236, S. C.; Kieswetter v. Kress, 24 Ky. Law Rep. 1242.)

9. The court of equity will properly protect the infants by its judgments and may direct or transpose and control parties to the action for their benefit.   (5 Pomeroy's Eq. (1 Eq. Rem., sec. 75); Thompson v. Thompson, 32 Ky. Law Rep. 319 and 323.)

10. On the cross-appeal we urge that the trial court erred in its restatement of the accounts of the administrator and that the judgment ought to have been rendered for $7,238.35 with interest from December 12, 1904, until paid instead of the amount for which it was rendered. This court having ruled that the Fidelity & Deposit Company is no party to the original or cross-appeal now pending before this court, of course its liability cannot now be determined.

OPINION OF THE COURT BY JUDGE HOBSON—Affirming..

Catherine Hessig died testate, a resident of McCracken county, in August, 1906. Her will, which was made shortly before her death, was duly admitted to probate, and this suit was brought for a settlement of her estate by F. G. Rudolph, who was the administrator, with the will annexed, the executors named in the will having failed to qualify. She left surviving her an only son, Dr. Herman T. Hessig, who was her sole heir at law. Dr. Hessig had two children, Carl and Fred, who were infants living in New York. They were made defendants to the petition, and their guardian ad litem filed an answer and cross-petition in the suit against their father, growing out of the following matter: Mrs. Hessig had a son, Fred A. Hessig, who died in the fall of 1903, a bachelor, leaving an estate amounting to something over $20,000. He left no will. His mother was his sole heir at law if he was domiciled in Kentucky; but his mother and brother, Herman, were jointly his heirs at law if he was domiciled in Tennessee at the time of his death. He died in Paducah, but he had lived for many years in Memphis. His property was there, and so, to cover all question, Dr. Herman T. Hessig, who qualified as his personal representative in Kentucky, also qualified as such in Memphis, and received the estate

and brought it to Kentucky. The Fidelity & Deposit Company of Maryland became his surety both in Kentucky and Tennessee. In July, 1904, the surety company, becoming uneasy, entered a motion in the McCracken county court that Dr. Hessig be required to give a new bond releasing it from future liability and indemnifying it against loss from liability already incurred. The motion of the company was sustained. Dr. Hessig did not give a new bond, but his mother signed to him a receipt in full, and he executed to her a note. This was supposed at the time to setle the matter; but in some way he lost the receipt, and he did not make a settlement with the county judge. The surety company, a little later finding this out, began to urge that a settlement be made and that the matter be put in proper shape. Finally, in November, Dr. Hessig procured from his mother a second receipt, substantially similar to the one she had executed before, filed it with the county judge, who made a settlement with him, and the settlement, having been laid over for exceptions, was duly' approved. After all this had been done, Dr. Hessig's wife, some time later, took out an attachment against his property to secure her in a claim for alimony; the surety company also brought a suit, and took out an attachment to recover for certain losses it had sustained in Tennessee as his surety on his bond executed there, on account of certain taxes which he had failed to pay, and the like. After these suits were filed Dr. Hessig's creditors forced him into bankruptcy, and all his property passed into the hands of the trustees in bankruptcy. In that proceeding his mother asserted her claim against her son on account of the money which she had receipted to him for, and for which in part he had executed to her a note. The

creditors resisted the allowance of the claim on the ground that Fred Hessig was really domiciled in Tennessee, and that only half of his estate belonged to his mother. But both the mother and Dr. Hessig testified that he had come to Paducah to make that his home, and, there being no contrary proof, the claim of the mother was allowed in the bankruptcy court, and the dividends were paid her upon it. The mother and her son, Herman, were evidently upon the most affectionate terms; he was her only child, and she had no other descendants except his two sons, Carl and Fred. By her will she directed that her just debts be paid. The remaining clauses of the will, so far as they are material to this controversy, are as follows:

"(3) I bequeath, will and devise unto my beloved son, Herman T. Hessig, the two lots and houses thereon situated, which are on the corner of Eighth and Jackson streets in Paducah, Ky., for and during his natural life, remainder to the heirs of his body.

"(4) I will, devise and bequeath all my property lying at the intersection of Ninth and Jones streets in Paducah, Ky., to my two beloved grandchildren, Carl and Freddy Hessig, equally; but should either of them die before Carl shall become of age, leaving no issue, then the interest of the one so dying to pass to the survivor and to my son, Herman T. Hessig; the interest so passing to my son Herman T. Hessig shall be for his life, remainder to the heirs of his body. In the event both of my grandchildren shall die without issue before the time Carl shall become of age, to-wit, twenty-one years old; then and in that event all right and title which they have in and to the above devised property shall descend to and become fixed in my son Herman T. Hessig for life, remainder to the heirs of his body.

"It is further my will and bequest, that the property on Jones street at the intersection of Eighth street shall be preserved intact, and undisposed of until such time as Carl shall become 21 years of age, and may then be disposed of or divided as the owners thereof may desire. My executors herein named or their successors, who may qualify, shall have the right to take charge of and possession of the Eighth and Jones street property and shall have full power and authority to rent and manage the same, to pay taxes, repairs and insurance and such other necessary expenses as to them may seem proper and right, and out of the proceeds they shall pass over to my said grandchildren the sum of $30.00 per month, monthly for their support and tuition, until such time as Carl shall become of age, and the property is subject to be divided under the terms of this will.

"The balance of the rents and profits of the houses on said Eighth and Jones street after paying taxes, repairs, insurance or other necessary expenses shall be either kept until there be enough to build other house or houses on said lots, or it may be paid over by my said executor or their successors to the said Carl and Freddie, or their heirs, as in the judgment of my executors may seem to the best interest of the owners of the said property.

"(5) I have not received a deed to the property on the corner of Ninth and Jones streets, or the house in which my son Herman T. Hessig resides on the corner of Eighth and Jackson streets, but I have bought same in at the sale by the trustees in bankruptcy in the matter of Herman T. Hessig in bankruptcy and the price on said purchase has been paid by me, and in the event I shall die before the deeds are made to me I hereby direct that the deeds to the

several lots shall be made to the devisees mentioned in this will and in accordance with its terms and provisions, and that the said property shall be in all respects treated as though the deeds to same had been made at the time of the execution of this will.

"(6) I give and bequeath and devise to my grandson Carl my gold watch and chain.

"(7) It is my wish that my household and kitchen furniture and all other personal property, undisposed of at the time of my death shall be equally divided between my son Herman and my grandchildren Carl and Freddie, or it may be sold by my executors, and the residue after paying my debts and funeral expenses may divide the same as above except that any balance I may owe on the Jones street property shall be paid out of the proceeds of that property."

There was a lien on the Jones street property for a balance of purchase money, and there was also a lien on this property for a street assessment. The ordinance providing for the assessment was passed just before Mrs. Hessig died, but the contract for the work was made after she died, and the work of course was done also after she died. The guardian ad litem for the two infants in this case sought to charge the property devised Dr. Hessig with all the debts of the estate, and also with the apportionment warrant, and the balance of the purchase money due on the Jones street property, on the ground that by the will the Jones street property was not to be disposed of until the infants were 21 years old. . He also made his answer a cross-petition against Dr. Hessig, and sought to recover of him one-half of the estate of Fred Hessig in his hands, on the ground that the release signed by his mother was without consideration and obtained by duress. He also sought a judg-

ment against the surety company on the administra-
tor's bond.   On final hearing, the circuit court dis-
missed the cross-petition against the surety company,
but gave judgment against Dr. Hessig for something
over $6,000 on account of the Fred Hessig estate, and
adjudged that no part of the property devised the
infants could be sold for the debts of the estate, in-
cluding the liens upon it, until the property devised to
Dr. Hessig was exhausted; and he directed a sale of
Dr. Hessig's property to satisfy the judgment.   From
this judgment Dr. Hessig appeals, and the guardian
ad litem has prosecuted a cross-appeal, on the ground
that the judgment against Dr. Hessig is not as large
as it should be.

. We do not find in the record any evidence at all .
that the receipt signed by Mrs. Hessig to Dr. Hessig
was obtained by duress.   The only evidence relied on
to show duress is that the county judge in November
said to Dr. Hessig that if he did not make a settle-
ment he would have to proceed against him for con-
tempt.   This was a very reasonable statement for the
county judge to make, for Hessig had failed for three'
months to obey the orders of the court, and he had
lost the receipt which he had obtained in August for
the purpose of making a settlement, thus showing
that he was neglecting the matter.   There is no proof
that this statement of the county judge was communi-
cated to Mrs. Hessig, and it could not have influenced
her conduct in any way, for the reason that she had
executed a similar receipt in August, three months
before anything of this sort was said by the county
judge.   That she was not imposed upon, and that she
fully understood what she did, is manifest from her
deposition in the bankruptcy case given some months
later, and after she had full time to reflect upon the

matter. The deposition is very clear and sensible. When she was asked why she had done this, she answered as follows: "Yes, sir, with all I got $21,000. You know how a mother is. I wanted to help him out. He was always a good child, and he has a good name everywhere, and I loved him and wanted to help him out. If I can make a man out of a boy, I do it." She perfectly understood what she had done when she asserted her claim in bankruptcy, and obtained the dividends upon it which were paid to her. The receipt was not without consideration. She had the right to lend her son the money in his hands, and she had the right to assist him in settling his accounts as administrator to further his credit, which at that time was much shaken, and to quiet the proceeding which the trust company had instituted against him. She was in no way deceived or overreached, and acted freely and voluntarily. By her own act the accounts of the administrator were settled; her claim against her son became one for money loaned, a personal debt, not a debt due as administrator. She understood this perfectly, and intended it so to be. When by the bankruptcy proceeding the son was discharged from his personal obligation which she therein asserted against his estate, he was entirely released from the debt, and it can not now be made the basis of any action against him. On the facts shown the circuit court should have dismissed the cross-petition seeking to charge Dr. Hessig on account of these matters. He properly dismissed it as to the surety company, but it should also have been dismissed as to Dr. Hessig.

The claim for purchase money, amounting to $392.30, was primarily a lien on the Jones street property. It was not a lien on any other property. The testatrix in her will expressly provided that

any balance she might owe on the Jones street property should be paid out of the proceeds of that property. By this provision of the will the balance due on the Jones street property is expressly charged to it, and must be paid out of that property. There is no conflict between items 4 and 7 of the will. The provision of item 4 that the property shall be preserved intact and undisposed of until Carl is 21 years of age, and may then be disposed of or divided as the owners may desire, is a limitation upon the power of the owners to make a voluntary disposition of the property. The testatrix evidently contemplated that, if there was any balance of purchase money owing on the Jones street property, it could be paid out of the rents accruing in the hands of the executor under item 4. It is true that this is a personal obligation of hers and all of her estate is liable for it; but as between the devisees no part of it should be paid out of the property devised Dr. Hessig unless the Jones street property is exhausted. The debt is a lien on that property, and there is nothing in the will to indicate that the testatrix had in mind preferring her grandchildren to her son. On the contrary, it appears from the whole will that she intended her son to have the property devised to him free from any claim on account of what was due on the purchase money of the Jones street property.

The claim of Thomas Bridges & Son for the street assessment was not a debt of Mrs. Hessig's. It was a lien on lots 13, 14, 15, 16 and 17, and these lots are liable for the claim; but she was not personally liable for it, nor is it a claim that may properly be demanded of the administrator. The court should not order the land sold in this action to pay the claim, but should direct the executors to apply the rents coming to

their hands to its payment, and, if this claim can not be paid in a reasonable time in this way, the claimant may bring an action against that property to enforce his lien. The same rule applies to all the other claims filed with the commissioner's report which grew out of the assessment against the property for the street improvement made under the ordinance of the city. When we exclude the debts above named, the balance of the debts reported by the commissioner are so small that it hardly seems probable that the amount will much exceed the personal estate, and this should be exhausted under the will before any sale is made of the land. The administrator does not need the help of the court of equity to sell personal property when a sale is necessary for the payment of the debts. If there is a deficiency which must fall upon the realty ,it should be borne by the devisees ratably; that is, each devisee should contribute to pay the general debts in the proportion that the real property devised to him bears to the value of the entire real estate. The allowances fixed by the circuit court were evidently based upon the judgment which he had entered; but upon the different view that we have taken of the case these allowances should not stand. The commissioner should not be allowed anything beyond the statutory allowance, and he should be required to file a statement showing the number of days he was engaged. We do not see anything in the record to justify a large allowance to the administrator's attorney or to the guardian ad litem, but these matters can be best regulated by the circuit court when he comes to render a final judgment. Only one attorney's fee should be allowed the administrator, and this should be confined to the services rendered him. The allowance to the guardian ad litem should be to

cover his services in the administrator's suit, and should not cover services on the cross-action instituted by him against Dr. Hessig.

The judgment appealed from on the cross-appeal is affirmed; on the original appeal the judgment is reversed, and the cause is remanded with directions to the circuit court to dismiss the cross-petition against Dr. Hessig, and for further proceedings not inconsistent with this opinion.